UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

| | | |
|---|---|---|
| ALLEN WILEY, II, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 11-97-HRW |
| | ) | |
| v. | ) | |
| | ) | |
| KENTUCKY DEPARTMENT OF | ) | **MEMORANDUM OPINION** |
| CORRECTIONS, *et al.*, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

***** ***** ***** *****

Allen Wiley, II, is an inmate confined in the Eastern Kentucky Correctional

Complex ("EKCC") in West Liberty, Kentucky.  Proceeding without counsel, Wiley

has filed a civil rights complaint challenging numerous conditions of his confinement

at EKCC.  Wiley has named nine defendants, and asserts claims against the seven

individually-named EKCC officials in both their individual and official capacities.[1]

---

[1]  The named defendants are: (1) the Commonwealth of Kentucky; (2) the Kentucky
Department of Corrections ("KDOC"); (3) Gary Beckstrom, EKCC Warden; (4) Jamie Nickells,
EKCC Officer; (5) Billy J. Patrick, EKCC Officer; (6) Todd Boyce, EKCC Chaplain; (7) Travis
Evans, EKCC Officer; (8) Shawn McKenzie, EKCC Unit Administrator; and (9) Heather Nickells,
EKCC Registered Nurse.  The Clerk of the Court will be instructed to modify the CM/ECF cover
sheet to reflect that the KDOC is a defendant separate from the State of Kentucky.  Wiley identified
one of the defendants as "Patrick, Billy J.," in the caption of the complaint [D. E. No. 1, p. 1], which
name the Clerk of the Court listed on the CM/ECF cover sheet as "Billy J. Patrick."  In the text of
the complaint, however, Wiley identified that defendant as "Patrick Billys."  The Clerk of the Court
will be directed to modify the CM/ECF sheet to reflect that "Billy J. Patrick" is also known as

Wiley asserts claims under 42 U.S.C. § 1983; the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") § 3 *et seq.*, 42 U.S.C.A. § 2000cc–1 *et seq.*; and Kentucky common law. Wiley seeks a declaratory judgment finding that the defendants' actions violated his federal constitutional rights; injunctive relief directing Warden Beckstrom to cease specified activity; compensatory and punitive damages against each defendant; his court costs; and any other equitable relief to which he is entitled.

Because Wiley has been allowed to proceed by paying the filing fee in installments [D. E. No. 6] and is asserting claims against government officials, the Court now screens his complaint pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B). Both of these sections require dismissal of any claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from defendants who are immune from such relief. *Id.*; *see also McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997).

As explained below, one defendant will be required to respond to Wiley's federal claims and pendant state claims, but Wiley's claims against the other defendants will be dismissed.

------------

"Patrick Billys."

2

## DISCUSSION
### 1. Claims under 42 U.S.C. § 1983

Wiley seeks damages under 42 U.S.C. § 1983 from the Commonwealth of Kentucky, the KDOC, and the EKCC defendants in both their official and individual capacities stemming from incidents he alleges occurred between August 19, 2010, and August 9, 2011. Wiley's demand or damages from the Commonwealth Kentucky and/or the KDOC will be dismissed because the Eleventh Amendment to the United States Constitution specifically prohibits federal courts from entertaining suits for money damages brought directly against a state or its agencies. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 687-88 (1993); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Likewise, Wiley can not recover damages from the EKCC defendants in their official capacities under § 1983 because state officials and employees sued in their official capacities for damages are absolutely immune from liability under the Eleventh Amendment to the United States Constitution. *See Will*, 491 U.S. at 71; *Wells v. Brown*, 891 F.2d 591, 592-93 (6th Cir.1989); *Kentucky v. Graham*, 473 U.S. 159, 165-69 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."). Wiley's § 1983 official capacity claims against the EKCC defendants will be dismissed for failure to state a

3

claim upon which relief can be granted.

The Court will address each of the constitutional claims which Wiley asserts against the EKCC defendants in their individual capacities.

1. **Alleged Denial of Quran on August 19, 2010**.   Wiley alleges that on August 19, 2010, defendants Patrick Billys and Jamie Nickles violated his First Amendment right to practice his religion by refusing to allow him to take his Quran with him when he was placed in administrative segregation on that date.  Based on Wiley's statements, it appears the alleged deprivation lasted one day.

This claim fails to state claim upon which relief can be granted because a temporary deprivation of a religious item does not rise to the level of a constitutional violation. *See*, *e.g.*, *Marsh v. Corrections Corp. of America*, 134 F.3d 383, 383 (10th Cir.1998) (table decision) (concluding that plaintiff's allegations that defendants temporarily deprived her of religious items for fifteen days failed to satisfy her burden of establishing First Amendment violation); *see also McCroy v. Douglas County Corrections Center*, 2010 WL 1610945, at *3 (D. Neb. Apr. 20, 2010) (prisoner did not state a claim for relief where his religious items were confiscated during a shakedown and then returned 15 days later after prisoner filed a grievance form). Wiley's claims challenging the denial of a Quran for a single day will be dismissed for failure to state a claim upon which relief can be granted.

4

2. **Alleged Excessive Force**.  Wiley states that on the same date, August 19, 2010, he demanded to speak to Billys' and Nickells' supervisor about their alleged refusal to provide him with a Quran.  Wiley alleges that in response to his inquiry, Nickells grabbed him by the neck and began choking him and Billys slammed him to the ground, causing his head to hit the concrete floor.  Wiley alleges that Nickells choked him so hard that he passed out, and that when he awoke, both officers were twisting and bending his arms, wrists, and head, causing him to suffer excruciating pain.  Wiley alleges that as a result of the excessive force Nickells and Billy applied to him, he sustained bruises on his wrists; an injured lip; pain, suffering, and swelling in his neck and on the left side of his head.  [D. E. No. 1, p. 3-4]

Wiley alleges that after the assault, he was confined for two weeks in a "dry cell" with no running water and without access to his personal property.  He states that because he lacked access to his personal property during this two-week period, he could not file a grievance about the alleged use of excessive force on August19, 2010.  [*Id.*, p. 5]

The KDOC's administrative regulations, known as Corrections Policies and Procedures ("CPP") govern prison grievance procedures in KDOC facilities.  *See* 501 K.A.R. 6:020.  CPP § 14.6, entitled "Inmate Grievance Process," lists the steps which KDOC inmates must pursue during the grievance process prior to filing a lawsuit.

Pursuant to CPP 14.6, a KDOC an inmate must file a written grievance and seek an Informal Resolution, [§ II (J)(1)-(4)], ("Step 1"). If not satisfied there, he must submit a written request to the Grievance Committee seeking a hearing to consider his grievance, [§ II (J)(2)], ("Step 2"). If not satisfied with the Grievance Committee's disposition, he must appeal to the Warden, [(§ II (J)(3)], ("Step 3"). Finally, if dissatisfied with the Warden's decision, he must file an appeal to the Commissioner of the KDOC, [§ II (J)(4)], ("Step 4"). Time frames for appeals and responses are established within the regulation.

Wiley admits in his complaint that he did not exhaust his excessive force claims through the KDOC's administrative remedy process, justifying that failure on his lack of access to his personal property for two weeks he was confined in the "dry cell." Wiley does not allege that during that two-week period, he either requested, or was denied, the forms necessary to comply with the KDOC's administrative remedy process.

The Prison Litigation Reform Act, ("PLRA") 42 U.S.C. § 1997e(a), requires state and federal prisoners to exhaust all available administrative remedies before filing suit challenging any aspect of their prison conditions. The Supreme Court of the United States has twice held that the statute means precisely what it says. *See Booth v. Churner*, 532 U.S. 731, 741 (2001); *Porter v. Nussle*, 534 U.S. 516, 525

6

(2002). Additionally, the Supreme Court has held that exhaustion of administrative remedies must be done "properly," which means going through all steps that the agency holds out, obeying all directions, and adhering to all deadlines set by the administrative rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Administrative exhaustion is required even if the prisoner subjectively believes that the administrative remedy procedure is ineffectual or futile. *Pack v. Martin*, 174 F. App'x. 256, 262 (6th Cir. 2006).

Wiley's lack of access to his personal property would not have prevented him from complying with the KDOC's administrative exhaustion process. In short, Wiley short-circuited the exhaustion process by filing this lawsuit. When the affirmative defense of failure to exhaust appears on the face of a complaint, a district court can, on its own motion, dismiss the complaint on the ground that it fails to state a claim. *Jones v. Bock*, 549 U .S. 199, 214-15 (2007); 28 U.S.C. § 1915A(b)(1)); *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007) (holding that a district court can dismiss a PLRA case on its own for failure to state a claim, predicated on failure to exhaust, if the complaint itself makes clear that the prisoner failed to exhaust his administrative remedies).

This Court, and other district courts in this circuit, have held that in light of *Jones*, *sua sponte* dismissal of a complaint is warranted where failure to exhaust is

apparent from the face of the complaint. *Walker v. Baker*, No. 6:10-CV- 68-ART

(E.D. Ky.) [R. 9 & 10, June 24, 2010]; *Smith v. Lief*, 2010 WL 411134, at *4 (E.D.

Ky. Jan. 27, 2010); *Gunn v. Kentucky Depart. Of Corrections*, 2008 WL 2002259, *

4 (W.D. Ky. May 7, 2008); *Deruyscher v. Michigan Dept. of Corrections Health*,

2007 WL 1452929, at *3 (E.D. Mich. May 17, 2007). Wiley's Eighth Amendment

excessive force claim against Defendants Patrick Billys and Jamie Nickells will be

dismissed without prejudice because of Wiley's admitted failure to exhaust the claim.

3. **Two-week Confinement in "Dry Cell."** Wiley alleges that during his two-

week confinement in the "dry cell," he had no running water; was unable to wash his

hands after using the bathroom; endured cold temperatures; was denied clean clothes,

linens, and access to his personal property; and that unidentified EKCC officers

verbally harassed and ridiculed him. [*Id.*, p. 4-5] Wiley alleges that these conditions

constituted cruel and unusual punishment in violation of the Eighth Amendment of

the United States constitution.

As he did with his excessive force claims, Wiley states that he was unable to

file any grievances concerning either the alleged "dry cell" conditions or the alleged

harassment ". . .due to no property for two weeks." [*Id.*, p. 5]. Wiley's excuse for not

exhausting his "dry cell conditions" claims is insufficient for the same reason stated

as to his excessive force allegations, but these claims will be dismissed with prejudice

8

because on their merits, they do not amount to constitutional violations.

To establish an Eighth Amendment violation based on the conditions of confinement, a prisoner plaintiff must show that the conditions resulted in "extreme deprivations" of basic necessities. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). Temporary placement in a cell with no flushable toilet is not an extreme deprivation of a basic necessity. *See Abdur–Reheem–X v. McGinnis*, 1999 WL 1045069, at *2 (6th Cir. Nov. 12, 1999); *Knop v. Johnson*, 977 F.2d 996, 1013 (6th Cir. 1992). The short-term lack of running water is also not a condition that violates the Eighth Amendment. *See Richmond v. Settles*, 2011 WL 6005197, at *6 (6th Cir. Dec. 2, 2011); *Diaz v. Cumberland County Jail*, 2010 WL 3825704, at *4 (D.N.J. Sept. 23, 2010); *Gibert v. Anderson County Sheriff's Office*, 2007 WL 328840, at *8 (D.S.C. Feb. 5, 2007); *Siller v. Dean*, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000).

The conditions about which Wiley complains - lack of running water, clean clothes and linens - were discomforts which he experienced for a short period of time, fourteen days. Being deprived of a working toilet or running water are temporary inconveniences, not conditions that fall beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S. D. Ohio 2006) ("[M]inor inconveniences resulting from the

difficulties in administering a large detention facility do not give rise to a constitutional claim.") (internal citation omitted).

Depriving an inmate of clean sheets and/or towels does not rise to the level of an Eighth Amendment violation. *Street v. Corr. Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996); *Irving v. Masker*, 2008 WL 2224262, at *1 (W.D. Mich. May 28, 2008); *Gilland v. Owens*, 718 F. Supp. 665, 685 (W.D. Tenn. 1989) ("Short term deprivations of toilet paper, towels, sheets, blankets, mattresses, toothpaste, toothbrushes and the like do not rise to the level of a constitutional violation."). *But see Flanory v. Bonn*, 604 F.3d 249, 255–56 (6th Cir. 2010) (holding that allegations that an inmate was deprived of toothpaste for 337 days and experienced dental health problems did not constitute a temporary inconvenience and were sufficient to state an Eighth Amendment claim). Wiley's complaints about the conditions of his two-week confinement in the "dry cell," *i.e.*, the temporary denial of running water, clean clothes, and linens, will be dismissed for failure to state an Eighth Amendment claim upon which relief can be granted.

Wiley's allegation that EKCC officials taunted and/or verbally harassed him during his confinement in the "dry cell" also fails to state a relief upon which can be granted because verbal harassment, while not condoned, does not qualify as an Eighth Amendment violation. *Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004)

10

(harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds*, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Williams v. Gobles*, 2000 WL 571936, at *1 (6th Cir. 2000); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987).  Wiley's allegations of verbal abuse and harassment while confined in the "dry-cell" will be dismissed for failure to state an Eighth Amendment claim.

4. **Overflowing toilet and offensive odors, September 11-12, 2010**.  Wiley states that after his confinement in the "dry-cell" concluded on  September 11, 2010, he was placed in cell where the toilet overflowed every time other inmates flushed their toilets. [D. E. No. 1, p. 5]  Wiley claims that the mal-functioning toilets caused human waste to spill onto the floor and walls of his cell, creating sickening odors which he was forced to smell.  Wiley alleges Unit Administrator Shawn McKensie ordered the floor officers not to move him to another cell or to clean up the waste, forcing him "... to breath and walk in others human waste until the next day."  [*Id.*].

The circumstances, nature, and duration of a deprivation  must be considered in  determining  whether  a  constitutional  violation  has  occurred."   *Spencer v. Bouchard*, 449 F.3d at 727 (*citing Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)).  Based on Wiley's statement, either he was removed from the polluted cell or

11

the cell with the overflowing toilet was cleaned "the next day," meaning September 12, 2010.  Under either scenario, Wiley's alleged exposure to the overflowing toilet and resulting odors, while no doubt unpleasant, was of short duration - one day - and did not amount to an Eighth Amendment violation. *Gilland v. Owens*, 718 F. Supp. 665, 684 (W.D. Tenn.1989); *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (finding no Eighth Amendment violation as a matter of law where inmate was exposed to raw sewage from an overflowed toilet in his cell for four days); *Mills v. C.C.A.*, 2010 WL 5155478, at *5 (M.D. Tenn. Dec.14, 2010) ("Even if the Court takes as true the allegations that [unsanitary] water flowed from a nearby shower into the Plaintiff's cell three times a week, that this condition occurred for a period of several weeks, and that the water was not promptly cleaned up, these facts simply do not show that he was subjected to the type of extreme deprivation necessary to implicate the Eighth Amendment."); *Evans v. Fogg*, 466 F. Supp. 949 (S.D.N.Y. 1979) (no claim stated by prisoner confined for 24 hours in refuse-strewn cell and for two days in flooded cell). *Compare Braswell v. Corrections Corp. of America*, 419 F. App'x 622, 627 (6th Cir. 2011) (finding an Eighth Amendment issue of fact in a § 1983 action where for nine months, the prisoner had been left in a filthy, disgustingly unsanitary cell where mold grew in the toilet and the cell floor was littered with food trays).

Wiley's Eighth Amendment claims alleging overflowing toilets and exposure to raw sewage and offensive odors between September 11-12, 2010, will be dismissed for failure to state a claim upon which relief can be granted.

5. **Seven-day hold on incoming mail-Muslim literature**. Wiley alleges that on December 31, 2010, EKCC mail-room employees placed a seven-day hold on a soft-back commentary Holy Quran mailed to him from a New York City mosque, but that two days later, the mail-room employees did not place a seven-day hold on a Christian bible mailed to another EKCC inmate from a church in Pikeville, Kentucky. [D. E. No. 1, pp. 5-6] Wiley alleges that he ". . . attempted to receive another holy Quran from the same mosque and it was again rejected." [*Id.*, p. 6] Wiley alleges that he wrote the warden and chaplain about the mail room employees denying his Quran while permitting another inmate to receive a Christian Bible, but that neither the warden nor the chaplain responded. Wiley does not allege that he pursued the KDOC's administrative remedy process set forth in CPP 14. 6.

Wiley did not refer to any KDOC policy authorizing mail-room employees to temporarily confiscate mailed literature, but he attached two "Notices of Unauthorized Mail," dated December 29, 2010, and March 1, 2011, respectively [D. E. No. 1-3, p. 1;  D. E. No. 1-4, p. 1] These notices informed Wiley that the Muslim faith books mailed to him constituted contraband and would be held for seven days

13

pursuant to paragraph seven of the notices, which states that "All books / magazines / religious material must be mailed by publisher or authorized distributor." [*Id.*, at ¶ 7] The contraband notices cite CPP 16.2 and EKCC 16.2 as authority for the seven-day hold on books, magazines, and religious material not mailed directly to an inmate by the publisher or authorized distributor. This policy, known as the "publishers only" policy, prohibits inmates from receiving books, magazines, and newspapers from sources other than their publisher.

To the extent that Wiley challenges the "publishers only" policy itself as an invalid restriction on his First Amendment right to practice his religion, his claim fails to state a claim upon which relief can be granted. In *Bell v. Wolfish*, 441 U.S. 520, 550 (1979), the Supreme Court held that a "publishers only" rule for receiving hard cover books does not violate the First Amendment. In 1989, the Sixth Circuit extended the "publishers only" rule to magazines, books, and soft-cover materials. *See Ward v. Washtenaw County Sheriff's Dep't.*, 881 F.2d 325, 330 (6th Cir. 1989) (holding that a "publishers only" policy for receiving magazines does not violate the First Amendment). Thus, the EKCC mailroom's implementation of the "publisher's rule" as to certain incoming publications did not violate the First Amendment's ban on the practice of religion.

Wiley also alleges that the EKCC mail-room staff discriminated against him

on the basis of his religion by placing a seven-day hold on Muslim literature mailed to him, while not placing a seven-day hold on Christian literature mailed to other EKCC inmates from non-publisher sources. This claim falls under the Fourteenth Amendment of the United States, which applies to state actors and guarantees equal protection of the law. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class" or burdened a fundamental right. *Midkiff v. Adams County Regional Water District*, 409 F.3d 758, 770 (6th Cir. 2005); *Purisch v. Tennessee Technical University*, 76 F.3d 1414, 1424 (6th Cir. 1996).

Wiley's Fourteenth Amendment equal protection claim fails because he did not identify the mail-room employee(s) who allegedly discriminated against him on the basis of his religion. To establish liability under 42 U.S.C. § 1983, a plaintiff must plead and prove that a defendant is personally responsible for the unconstitutional actions that injured him. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978); *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (per curiam). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir.2008). Unless the complaint affirmatively pleads personal involvement of a defendant in the unconstitutional conduct, the allegation fails to state a claim and dismissal of that claim is warranted.

15

*Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Wiley did not allege that any of the five individually named EKCC defendants in this action violated his equal protection rights by placing a hold on his incoming Muslim religious material while not placing the same seven-day hold on incoming Christian mailings. Wiley alleges that on December 31, 2010, "*The mailroom* then placed a seven (7) day hold on the Quran . ... " [D. E. No. 1, p. 6 (emphasis added)], but he named **no** EKCC mail-room employees as defendants to this action. The "Staff Signature" on the two contraband notices attached to the complaint is not entirely legible, but appears to be that of a "Nikki Clifford," *see* D. E. Nos. 1-3 and 1-4, but Wiley did not name this individual - or any other EKCC mail-room employee - as a defendant to this action.

Wiley did name Warden Gary Beckstrom as a defendant, but he did not allege that Beckstrom implicitly authorized, approved, or knowingly acquiesced in the mail-room's alleged religious discrimination against him. Any construed equal Fourteenth Amendment equal protection claims against Warden Beckstrom must be dismissed because *respondeat superior* can not form the basis of supervisor liability in a § 1983 action. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983, a plaintiff must plead that each Government-official defendant, through the official's own conduct, has violated the

Constitution."); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1994).

Finally, Wiley's allegation that he wrote letters and/or grievances to Warden Beckstrom complaining about Boyce's failure to provide him with a Quran fails to state a claim for relief because a warden's failure to respond to, or act upon, a grievance is insufficient to support a claim of supervisory liability under § 1983. *Harris v. Caruso*, 465 F. App'x 481, 487 (6th Cir. 2012) (citing *Shehee*, 199 F.3d at 300). Wiley's Fourteenth Amendment claim that the EKCC mail-room staff denied him equal protection of the law by discriminating against him on the basis of his religion will be dismissed for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915 (e)(2).

6. **Denial of Quran for one-year**. Wiley alleges that after the incidents of August 19, 2010, he was confined in administrative segregation at EKCC for twelve months;[2] that during that 12-month period, he repeatedly asked EKCC Chaplain Todd Boyce to provide him with a Quran; and that Boyce refused to provide him with a Quran but promptly provided other inmates with Christian Bibles at their request. [D. E. No. 1, pp. 6-7] Wiley asserts that his inability to obtain a Quran for an entire year (a) prevented him from practicing and observing his religious beliefs, in violation of

---

[2] It was unclear when Wiley's twelve-month period in segregation began and ended.

17

the First Amendment of the United States Constitution, and (b) violated his right to equal protection of the law guaranteed by the Fourteenth Amendment of the United States Constitution.

Wiley alleges that for several months he attempted to administratively grieve that issue, but that the segregation officers continually prevented him from exhausting the claim, either by refusing to place his name on the grievance list or by refusing to provide him with a grievance form.   [D. E. No. 1, p. 7].   Wiley attached correspondence from the KDOC in response to his inquiries about obtaining a Quran. [D. E. No. 1-5; 1-6].   Accepting that allegation as true, Boyce will be directed to respond to Wiley's First and Fourteenth Amendment claims.

7. **Rat in Soup**.  Wiley alleges that on May 1, 2011, he discovered a dead rat in the soup which he had been eating; that after he repeatedly complained about the discovery, defendant Shawn McKensie provided him with a new food tray from which the bread and dessert were missing; and that as a result of ingesting the contaminated soup, he vomited and experienced stomach spasms for three days. [D. E. No. 1, pp. 7-8]  Wiley alleges that he was "denied grievance opportunities with refusals to be put on the grievance list, " [*Id.*, p. 8], but he attaches two letters from James Erwin, Deputy Commissioner of the KDOC [D. E. Nos. 1-7 and 1-8] in which Erwin responded to Wiley's complaints about discovering a rodent in his soup.

18

Wiley's allegations do not rise to the level of an Eighth Amendment violation. Courts have consistently held that isolated incidents of foreign bodies, including rodents and insects, surfacing in the food served to prisoners is not an Eighth Amendment violation. *Tucker v. Rose*, 955 F. Supp. 810, 815 (6th Cir. 1997) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1974)). "The fact that the [prison] food occasionally contains foreign objects or is sometimes served cold, while unpleasant, does not amount to a constitutional deprivation." *Smith v. Younger*, No. 98–5482, 1999 WL 623355, at *2 (6th Cir. Aug. 9, 1999) (affirming district court's dismissal of plaintiff's Eighth Amendment claim based on the presence of a worm in her peanut butter); *see also, Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985); *Miles v. Konvalenka*, 791 F.Supp. 212 (N.D. Ill.1992) (single instance of finding mouse in food not actionable). Wiley's claim about his prison food on May 1, 2011, will be dismissed for failure to state a claim upon which relief can be granted.

8. **Denied Access to Legal Documents**. Wiley alleges that on June 10, 2011, he attempted to take his legal materials with him to a court proceeding in Louisville, Kentucky, but that unidentified EKCC officers informed him that defendant Shawn McKensie did not allow prisoners in segregation to take legal documents to court. [D. E. No. 9] . Wiley alleges that he needed to provide the documents to his attorney. Wiley does not allege what constitutional right, or rights, of his were violated by this

19

action, but broadly construing his claim, it would fall under the First Amendment of the United States Constitution, which guarantees the right of access to the courts, and/or the Sixth Amendment, which guarantees the right to counsel in a criminal proceeding. Wiley's claim fails under either amendment.

Prisoners have a constitutional right to access to the courts. *Lewis v. Casey*, 518 U.S. 343 (1996); *Hadix v. Johnson*, 182 F.3d 400 (6th Cir. 1999); *Leveye v. Metropolitan Pub. Def. Office*, 2003 WL 21801466 (6th Cir. Aug.4, 2003). To state a viable First Amendment claim, an inmate must show that he suffered an "actual injury" because of the prison officials' actions. *Lewis*, 518 U.S. at 351. This injury requirement is not satisfied by "just any type of frustrated legal claim." *Id.* A prison official may be held liable only if his actions either prevented a prisoner from pursuing, or caused the rejection of, a specific non-frivolous direct appeal, habeas corpus application, or a civil rights action. *Id; see also Hadix*, 182 F.3d at 405; *Thaddeus–X v. Blatter*, 175 F.3d 378, 391 (6th Cir.1999). "Impairment of any other litigating capacity is simply one of the incidental, and perfectly constitutional, consequences of conviction and incarceration." *Lewis*, 518 U.S. at 355.

Wiley does not identify what type of legal proceeding he attended on June 10, 2011, but irrespective of the nature of the case, he did not allege that his inability to take unspecified legal documents to his attorney at that proceeding resulted in any

20

specific adverse consequence to him in the Louisville legal proceeding, or prejudiced

him in any of the three examples listed in *Lewis*. *See Stanley v. Vining*, 602 F.3d 767,

770 (6th Cir. 2010) (rejecting prisoner's First Amendment claim because he did not

allege that the guard's interference with his legal mail in any way affected his access

to the courts); *Jones v. Lee*, 2012 WL 683362, at *8 (E.D. Mich. March 2, 2012)

(holding hat prisoner failed to "allege, or provide evidence of, any specific,

litigation-related detriment" resulting from the defendant's allegedly denying him

access to the prison law library).  Absent an actual injury in a legal proceeding to

which the right of access is protected by the First Amendment, Wiley's construed

First Amendment claim must be dismissed for failure to state a claim upon which

relief can be granted.

Additionally, Wiley does not allege a valid Sixth Amendment claim on this

issue.  The Sixth Amendment's reach "... is only to protect the attorney-client

relationship from intrusion in the criminal setting. . . ." *Wolff v. McDonnell*, 418 U.S.

539, 576-77 (1974).  As Wiley does not allege that the court proceeding he attended

on June 10, 2011, to which he was not allowed to bring his legal documents, involved

a criminal matter.  Any construed Sixth Amendment claim fails as a matter of law.

9. **Removal of Personal Property**.  Wiley alleges that upon returning to his

cell after his June 10, 2011, court appearance, all of his personal property, consisting

of "legal, Islam materials, responses to letters of complaints, etc." had been removed from his cell. [D. E. No. 1, p. 9] Wiley alleges that when he attempted to grieve the issue by placing his name of the grievance list, his name was "not called out as usual," *id*.; that he wrote the warden but received no response; and that when some of his personal property was returned to him on August 16, 2011, most of his personal items were still missing, including his Muslim books. He valued his un-returned Muslim books at approximately $80.00. [*Id*., p. 10]

In a federal claim alleging the deprivation of personal property without due process of law, a plaintiff must (1) demonstrate that he was deprived of property as a result of established state procedure that itself violates due process rights; or (2) prove that the defendants deprived him of property pursuant to a "random and unauthorized act" and that available state remedies would not adequately compensate him for the loss of the property. *See Macene v. MJW, Inc*., 951 F.2d 700, 706 (6th Cir. 1991); *Vicory v. Walton*, 721 F.2d 1062, 1064 (6th Cir. 1983).

Wiley has not satisfied either criterion. He did not allege that the seizure of his personal property resulted from an established policy that violated his due process rights in violation of the Fourteenth Amendment. Wiley's allegation could be construed as a claim that his property was removed pursuant to a random or unauthorized act, but Wiley had an available remedy - a state court action for

22

conversion - through which he could have sought compensation for his seized property. The unauthorized intentional deprivation of property does not violate the due process clause if a meaningful post-deprivation remedy for the loss is available. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Bailey v. Carter*, 15 F. App'x 245, 251 (6th Cir. 2001); *Vicory*, 721 F.2d at 1063; *Plummer v. Debbo*, 2010 WL 6749074, at \*2 (D. S. C. May 26, 2010).

Wiley has not demonstrated that his state court remedy for the deprivation (either intentional or negligent) of his personal property was inadequate, and it was his burden to make that showing. *Vicory*, 721 F.2d at 1066; *Fox v. Van Oosterum*, 987 F.Supp. 597, 606 (W.D. Mich. 1997). Wiley's claims challenging the removal and confiscation of his personal property on June 10, 2011, will be dismissed for failure to state a claim upon which relief can be granted.

10. **Ant-infested Ramadan Food Tray**. Wiley alleges that on August 1, 2011, while he was observing the Ramadan religious practice of fasting until sundown, Officer Evans served him a food tray which was infested with ants; that when he complained to Evans about the food, Evens laughed at him and ridiculed him; and that after Evans removed the ant-infested food tray, he received no replacement despite the fact that he had been fasting all day. [D. E. No. 10-11]

These claims fail as a matter of law. If true, the existence of ants in Wiley's

23

food on that date created an unpleasant and even unsanitary condition, but as

previously explained, isolated incidents of food contaminated with foreign matter do

not rise to the level of Eighth Amendment violations. *Tucker v. Rose*, 955 F. Supp.

at 815; *Smith v. Younger*, 1999 WL 623355, at *2; *Hamm v. DeKalb County*, 774

F.2d at 1575 (11th Cir. 1985). Further, the verbal abuse and harassment by Officer

Evans, even if true, does not qualify as an Eighth Amendment violation. *Violett*,

2003 WL 22097827, at *3; *Williams*, 2000 WL 571936, at *1; *Ivey*, 832 F.2d at 955.

Wiley's complaints about the quality of the  food served to him on August 1, 2011,

and his claims of alleged verbal abuse on that date, will be dismissed for failure to

state a claim upon which relief can be granted.

11. **Alleged emotional distress**.  Wiley states that all of the defendants'

alleged actions caused him to suffer emotional distress and emotional scarring, for

which he seeks damages.  [D. E. No. 1, p. 14]  This claim fails because emotional

distress is not compensable in the prison context absent a physical injury.  42 U.S.C.

§ 1997e(e) precludes any claim by a prisoner "for mental or emotional injury suffered

while in custody without a prior showing of physical injury." *See also*, *Harden Bey*

*v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008) (affirming dismissal of emotional

distress claims where inmate complained of placement in segregation but alleged no

physical injury as a result of such confinement); *Carter v. Tucker*, 69 F. App'x 678,

680 (6th Cir. 2003) (prisoner's claims of emotional distress were properly dismissed because he alleged no physical injury resulting from defendants' alleged actions).

Wiley alleges that he suffered physical injuries when Defendants Nickells and Billys applied excessive force on him on August 19, 2010, but this allegation does not assist Wiley because the Court has dismissed this claim without prejudice for obvious lack of exhaustion. Wiley also alleged that on May 1, 2011, he experienced vomiting and stomach spasms as a result of ingesting contaminated soup, but the Court has dismissed that allegation because it did not amount to a compensable Eighth Amendment violation. Wiley does not allege that he otherwise suffered a physical injury as a result of the other complained-of actions. Accordingly, Wiley's demand for damages for emotional distress will be dismissed for failure to state a claim upon which relief can be granted.

12. **Search of his Cell**. Wiley states that on August 9, 2011, Defendant Billys and another unidentified EKCC searched his cell to collect his (Wiley's) hand writing samples, and that they ordered him to stand outside of his cell while they searched his cell. [D. E. No. 1, p. 18] Wiley alleges that Billys "... knew who plaintiff was before the search was conducted, assaulted plaintiff prior to this incident. ..." *id.*; that Billys searched his cell to harass him, not to maintain security; and that the search was a "shakedown" in violation of the Eighth Amendment. Wiley further alleges that

25

ordering him to stand outside of his cell violated KDOC-CPP 9.8.  Wiley did not explain what conduct CPP 9.8 requires, permits, or prohibits in the context of a cell search, but his description of the CPP 9.8 suggests that it prohibits an KDOC correctional officer from searching an inmates' cell outside of the inmates' presence. To the extent that Wiley alleges that Billys engaged in a pattern of harassment consisting of more than the single search of his cell on August 9, 2011, and that Billys' actions, taken as a whole, constituted cruel and unusual punishment under the Eighth Amendment, his claim lacks merit.  Cell searches are a critical part of prison security, *Hensley v. Kampshaefer*, 2009 WL 69074, at *4 (W.D. Ky. Jan. 9, 2009), and prisoners have no protected liberty interest to be free from searches of their cells, *Hudson v. Palmer*, 468 U.S. 517 (1984)

A single search of a prisoner's cell does not amount to an Eighth Amendment violation. *See*, *e.g.*, *Tate v. Campbell*, 85 F. App'x 413, 417 (6th Cir. Dec. 15, 2003). To establish a pattern of harassment sufficient to implicate the Eighth Amendment, a prisoner faces a high hurdle. For example, in *Johnson v. Dellatifa*, the prisoner alleged that the defendant:

> continuously bangs and kicks Johnson's cell door, throws his food trays through the bottom slot of his cell door so hard that the top flies off, makes aggravating remarks to him, makes insulting remarks about his hair being too long, growls and snarls through his window, smears his window to prevent him from seeing out of it, behaves in a racially

> prejudicial manner toward him and jerks and pulls him unnecessarily
> hard when escorting him from his cell. Johnson contends that Stasewish
> knows that he suffers from hypertension and intentionally harasses him
> in an attempt to cause him to suffer a heart attack, stroke or nervous
> breakdown.

*Johnson v. Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004). The Sixth Circuit rejected

Johnson's argument, finding that even if the allegations of "shameful and utterly

unprofessional behavior by the defendant" were true, they were insufficient to

establish an Eighth Amendment violation because "... harassment and verbal abuse,

such as Johnson has described, do not constitute the type of infliction of pain that the

Eighth Amendment prohibits." *Id.* at 546 (internal citations omitted).

Applying that rule, this Court has previously determined that the alleged verbal

abuse about which Wiley complained did not amount to an Eighth Amendment

violation. Even adding to that equation the single search of Wiley's cell on August

9, 2011, the pattern of harassment Wiley alleged in his complaint falls far short of the

allegations in the *Dellatifa* case. *See also*, *Carney v. Johnson*, 2010 WL 3810153, at

*2 (W.D. Mich. Sept. 23, 2010) (adopting magistrate judge's recommendation to

dismiss prisoner's Eighth Amendment claim alleging that prison officials' earlier

verbal comments and subsequent single search of his cell constituted a campaign of

harassment prohibited by the Eighth Amendment). Wiley's allegation that defendant

Billys violated his Eighth Amendment rights by searching his cell on August 9, 2011,

27

will be dismissed for failure to state a claim upon which relief can be granted.

Wiley's next claim - that Billys violated CPP 9.8 - also fails to state a constitutional claim under § 1983. Assuming that CPP 9.8 prohibits a correctional officer from searching a prison cell outside of the inmate's presence, as Wiley suggests, the EKCC officers' failure to follow KDOC policy does not state a valid constitutional claim. *Kennedy v. Stallard*, 2010 WL 1489288, at *1 (E.D. Ky. April 12, 2010) (citing *Sandin v. Conner*, 515 U.S. 472 (1995)); *Higgs v. Sanford,* 2010 WL 1959530, at *4 (W.D. Ky. May 17, 2010); *see also Smith v. City of Salem, Ohio*, 378 F.3d 566, 578 (6th Cir. 2004) ("state law, by itself, cannot be the basis for a federal constitutional violation."). While the violation of a prison policy may constitute negligence in some cases, it does not amount to a constitutional violation. *Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992).

Next, it is unclear if Wiley is alleging that the search of his cell was retaliatory, but even if that was Wiley's intention, such a claim would fail. To establish a claim of retaliation, a plaintiff must show that (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there was a causal connection between elements one and two - that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Brown v. Crowley*, 312 F.3d 782,

787 (6th Cir. 2002); *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Though searching a prisoner's cell and seizing his legal paperwork could constitute an adverse action, *Bell v. Johnson*, 308 F.3d 594, 600 (6th Cir. 2002), Wiley did not allege that at the time of the August 9, 2011, cell search, he was engaged in activity that was protected by the First Amendment, *i.e.*, filing grievances or lawsuits in court. Wiley stated that Billys had used excessive force against him on a prior occasion, but such an allegation, even if true, is not the same as an allegation that he was engaged in constitutionally protected conduct at the time of the search.

Wiley's allegations challenging the August 9, 2011, search of his cell will be dismissed for failure to state a claim upon which relief can be granted.

13. **Filing of False Disciplinary Charge**. Wiley alleges that on August 9, 2010, defendant Heather Nickells found and read an apology letter he had written to an EKCC nurse concerning an event unrelated to this action, and that based on the contents of his letter, Nickells caused a false disciplinary charge (pursuing a relationship with a staff member) to be filed against him. [D. E. No. 1, p. 18-19] Wiley's factual allegations on this issue are not entirely clear, but he also appears to allege that Heather Nickells was retaliating against him because Jamie Nickells- a relative of Heather Nickells- had assaulted him on a prior occassion. [*Id.*, p. 19]. Wiley alleged that it was highly probable that he would be convicted of the charged

29

offense and that he would be given the maximum penalty, *i.e.*, 45 days in segregation and 60 days' loss of good time credit. [*Id.*, p. 20]. Broadly construed, Wiley's claim is that defendant Heather Nickells' actions violated his right to due process of law guaranteed by the Fourteenth Amendment of the United States Constitution.

Wiley's claim against Nickells suffers from two deficiencies. First, Wiley lacked standing to raise this claim when he asserted it in his complaint. A plaintiff must have standing to assert a claim alleging a violation of his constitutional rights, *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir. 2009). To establish standing under Article III of the United States constitution, a plaintiff must show that: (1) he has suffered an injury in fact which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* (quoting *Am. Civil Liberties Union of Ohio, Inc. v. Taft*, 385 F.3d 641, 645 (6th Cir. 2004)). At the time Wiley filed his complaint, he was merely speculating that he would be convicted of the disciplinary offense and that he would lose good-time credits. Thus, his due process claim lacks merit and must be dismissed.

Second, even if Wiley has since been convicted of the disciplinary charge and has lost any good time credits, he can not collaterally challenge his prison disciplinary

conviction by filing a civil rights action *unless and until* his disciplinary conviction has been reversed, set aside, or called into question in a habeas corpus proceeding or other tribunal, because success in a § 1983 action would necessarily imply the invalidity of his disciplinary conviction, an impermissible result. *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997); *Lee-Bey v. Gundy*, 80 F. App'x 435, 436 (6th Cir. 2003) (Michigan prisoner could not challenge a misconduct proceeding resulting in a loss of good-time credits in a § 1983 action because his major misconduct conviction had not been reversed).

If Wiley has been convicted of the charged disciplinary offense and has lost good-time credits, he must first file a 28 U.S.C. § 2255 habeas petition in state court challenging that conviction and the loss of his good-time credits. If Wiley's disciplinary conviction and/or sanction has been set aside or reversed in that proceeding, only then may he proceed with a civil rights action against those persons involved in his disciplinary conviction. Wiley's Fourteenth Amendment due process claim challenging his disciplinary charge will be dismissed without prejudice.

## 2. Claims under 42 U.S.C. § 1985

Wiley alleges that the defendants' actions also violated 42 U.S.C. § 1985 (3). [D. E. No. 1, p. 3]. This statue prohibits conspiracies to deprive an individual of his or her right to equal protection of the law. A § 1985(3) conspiracy claim requires a

plaintiff to prove five elements: (1) the existence of a conspiracy; (2) the purpose of the conspiracy was to deprive any person or class of persons the equal protection or equal privileges and immunities of the law; (3) an act in furtherance of the conspiracy; (4) injury or deprivation of a federally protected right, and (5) discrimination based on race or membership in another class comprising "discrete and insular minorities that receive special protection under the Equal Protection Clause because of inherent personal characteristics." *Volunteer Med. Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 224 (6th Cir. 1991) (internal quotation marks and citations omitted).

Wiley has not satisfied the first element of §1985(3). Although Wiley alleged that various EKCC defendants engaged in specific and isolated unconstitutional conduct, he alleged no facts suggesting that any of the defendants conspired to violate his right to equal protection of the law. "'Conspiracy claims must be pled with some degree of specificity and ... vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim.'" *Ctr. for Bio–Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)).

Even if Wiley had alleged sufficient facts constituting a conspiracy, he can not satisfy the fifth element of § 1985(3) because prisoners are not a "protected class" for

32

equal protection purposes. *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir.1997); *Dotson v. Wilkinson*, 477 F. Supp. 2d 838, 851 (N.D. Ohio 2007). Wiley's § 1985(3) claims will be dismissed for failure to state a claim upon which relief can be granted.

### 3. CLAIMS UNDER RLUIPA

The statutory framework known as RLUIPA prohibits prison officials from implementing a prison rule that imposes a substantial burden on an inmate's exercise of his or her religious beliefs unless the officials can demonstrate that the rule "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-l(a)(l)-(2). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005).

Wiley's claims for damages under RLUIPA against the Commonwealth of Kentucky, the KDOC, and the EKCC defendants in their official capacities, are barred by Eleventh Amendment's grant of sovereign immunity. *Sossamon v. Texas*, ___ U.S. ___, 131 S.Ct. 1651 (2011) (RLUIPA generally authorizes only injunctive relief and does not waive a state's sovereign immunity from suit for money damages).

Wiley also asserts RLUIPA claims against the EKCC defendants in their

individual capacities. Whether RLUIPA allows damages to be awarded against state officials sued in their individual capacities is an open question, but the majority of district courts in this circuit have held that such suits would be in the nature of a private right of action under RLUIPA and are not authorized. *See Aladimi v. Hamilton County Justice Center*, 2012 WL 292587, at *18 (S.D. Ohio Feb. 1, 2012); *Treesh v. Bobb–Itt*, 2011 WL 3837099, at *3 (S.D. Ohio Aug. 29, 2011); *Heard v. Caruso*, 2010 WL 5759027 (W.D. Mich. May 27, 2010), *adopted and affirmed*, 2011 WL 444769 (W.D. Mich. Jan 31, 2011); *Garrison v. Dutcher*, 2008 WL 4534098, at *4 (W.D. Mich. Sept. 30, 2008) ("The Court is persuaded by the reasoning of the [United States Court of Appeals for the] Eleventh Circuit and concludes that RLUIPA does not authorize individual-capacity claims."); *Horacek v. Burnett*, 2008 WL 4427792, at *1 (E.D. Mich. Sept. 30, 2008) (granting summary judgment as to RLUIPA claims against the defendant in his personal capacity).[3]

Given the weight of authority in this circuit, Wiley's request for damages under RLUIPA will be dismissed for failure to state claim upon which relief can be granted.

### 4. Pendant State Law Claims

---

[3] One district court in this circuit permitted individual capacity claims to proceed under RLUIPA. *Farnsworth v. Baxter*, 2007 WL 2793364, at *4 (W.D.Tenn. Sept. 26, 2007). *Farnsworth* could be distinguished from the other cases cited above on the basis that the district court merely explained that the specific case which the defendants had cited in their summary judgment motion (seeking qualified immunity) did not hold that it was clearly established that RLUIPA conferred liability for damages against a defendant sued in his individual capacity. *Id.*

Wiley alleges that by taking the various actions he alleged, the EKCC defendants negligently and intentionally inflicted  emotional distress on him in violation of Kentucky state law.

The only EKCC defendant who will be required to respond to Wiley's federal constitutional claims is Chaplain Todd Boyce, as the Court has dismissed Wiley's federal claims against the other EKCC defendants. A district court should generally decline to exercise jurisdiction over pendent state law claims when the underlying federal claims have been dismissed. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Taylor v. First of Am. Bank–Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992). The Court will allow Wiley's  pendant state law claims to proceed against defendant Todd Boyce, but will dismiss Wiley's pendant state law claims asserted against all of the other EKCC defendants.

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

1.      The Clerk of the Court shall modify the CM/ECF sheet to reflect that (a) Defendant "Billy J. Patrick" is also known as "Patrick Billys," and (b) the KDOC is a separate, specific defendant in this proceeding;

2.      The following claims are **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted:

a.  Wiley's 42 U.S.C. § 1983 claims against the State of Kentucky, the KDOC, and all seven EKCC defendants in their official capacities;

b.  Wiley's First Amendment claims that defendants Patrick Billys and Jamie Nickells denied him a Quran for one day on August 19, 2010;

c.  Wiley's Eighth Amendment claims challenging the conditions of his confinement in the "dry cell" between August 19, 2010, and September 11, 2010;

d.  Wiley's Eighth Amendment claims alleging verbal abuse and verbal harassment while he was confined for two weeks in the "dry-cell;"

e.  Wiley's Eighth Amendment claims alleging that defendant Shawn McKensie exposed him to overflowing toilets, raw sewage, and offensive odors between September 11-12, 2010;

f.  Wiley's First Amendment freedom of religion claims and his Fourteenth Amendment equal protection claims challenging the EKCC mail-room's placing a seven-day hold on his incoming mail/religious literature;

36

g.    Wiley's Eighth Amendment claims alleging the discovery of a dead rat in his soup on May 1, 2011;

h.    Wiley's First and Sixth Amendment claims alleging that on June 10, 2010,  defendant Shawn McKensie denied him access to his legal documents;

i.    Wiley's Fourteenth Amendment claims stemming from the alleged removal of his personal property from his cell on June 10, 2011;

j.    Wiley's Eighth Amendment claims alleging the discovery of ants in his Ramadan food tray on August 1, 2011;

k.    Wiley's Eighth Amendment claims alleging emotional distress;

l.    Wiley's claims under the First, Fourth, and Eighth Amendments stemming from the search of his cell by defendant Billys on August 9, 2011;

m.    Wiley's demand for damages under 42 U.S.C. § 1985(3);

n.    Wiley's demand for damages under RLUIPA;

o.    Wiley's claims state law claims alleging negligent and intentional infliction of emotional distress against the Commonwealth of Kentucky, the KDOC, and EKCC defendants Gary Beckstrom,

37

EKCC Warden; Jamie Nickells, EKCC Officer; Billy J. Patrick, a/ka "Patrick Billys," EKCC Officer; Travis Evans, EKCC Officer; Shawn McKenzie, EKCC Unit Administrator; and Heather Nickells, EKCC Registered Nurse.

3.   The following claims are **DISMISSED  WITHOUT PREJUDICE**:

     a.   Wiley's Eighth Amendment claims that defendants Patrick Billys and Jamie Nickells applied excessive force on him August 19, 2010;

     b.   Wiley's Fourteenth Amendment due process claim that defendant Heather Nickells denied him due process of law by filing a false disciplinary charge against him on August 9, 2011;

4.   The Clerk of the Court Shall **TERMINATE** the following defendants: (a) the Commonwealth of Kentucky, (b) the KDOC; (c) Gary Beckstrom, EKCC Warden; (d) Jamie Nickells, EKCC Officer; (e) Billy J. Patrick, a/ka "Patrick Billys," EKCC Officer; (f) Travis Evans, EKCC Officer; (g) Shawn McKenzie, EKCC Unit Administrator; and (h) Heather Nickells, EKCC Registered Nurse;

5.   Wiley's First and Fourteenth Amendment claims alleging that defendant Todd Boyce, EKCC Chaplain, denied him a Quran for one year and denied him equal protection of the law, and his pendant state law claims against Boyce alleging

negligent and intentional  infliction of emotional distress, shall proceed;

6.    The Ashland Clerk's Office shall prepare and issue summons for defendant Todd Boyce, EKCC Chaplain and shall also prepare as many copies of the complaint [D. E. No. 1], and this Order, as there are summonses and any required USM Forms 285.  If insufficient information exists to sufficiently or effectively complete any summons or USM Form 285 regarding Boyce, the Clerk shall promptly make a Clerk's entry on the docket stating why the Clerk cannot complete the summons or USM Form 285 or any other documents necessary to effectuate service;

7.    The Ashland Clerk shall send by certified mail the required Service Packets for Defendant Todd Boyce to the United States Marshals Service "USMS" in Lexington, Kentucky.  The Clerk shall enter the certified mail receipt into the record and note in the docket the date on which the Service Packet was delivered to the USMS;

8.    The USMS shall serve defendant Todd Boyce by:

a.    Sending a Service Packet to him to be served by way of certified or registered mail, and

b.    Sending a Service Packet for him to the KDOC in Frankfort, Kentucky, by certified or registered mail; or,

c.    Personally serving a Service Packet upon him through any

39

arrangement it may have with the KDOC;

10.     Wiley shall immediately advise the Ashland Clerk's Office of any change in his current mailing address. Failure to do so may result in dismissal of this case.

11.     Wiley must communicate with the Court solely through notices or motions filed with the Ashland Clerk's Office.   The Court will disregard correspondence sent directly to the Judge's chambers; and

12.     For every further pleading or other document he wishes to submit to the Court, Wiley shall serve upon each defendant, or, if appearance has been entered by counsel, upon each attorney, a copy of the pleading or other document. Gamble shall send the original papers to be filed with the Clerk of the Court together with a certificate stating the date a true and correct copy of the document was mailed to each defendant or counsel.  If a District Judge or Magistrate Judge receives any document which has not been filed with the Clerk, or which has been filed but fails to include the certificate of service of copies, the Court will disregard it.

This 21st day of November, 2012.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge